ROBERT R. RUSSELL AND BARBARA E. RUSSELL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Russell v. Commissioner
Docket No. 2860-79.
United States Tax Court
T.C. Memo 1982-709; 1982 Tax Ct. Memo LEXIS 41; 45 T.C.M. (CCH) 290; T.C.M. (RIA) 82709; December 6, 1982. James A. Christenson, for the petitioners. *43 Dale P. Kensinger, for the respondent. TIETJENS
MEMORANDUM OPINION TIETJENS, Judge: Respondent determined the following deficiencies in petitioners' Federal income tax: Tax Year Ended
Amount of
December 31
Deficiency
1973
$688.05
1974
788.68
1975
555.92
After concessions, the only issue for our determination is whether the petitioners are entitled to claim a depreciation deduction under section 167(a)[1] for a farmhouse used as a personal residence by petitioner Robert R. Russell's joint venture partner. This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference. Robert R. Russell and Barbara E. Russell [2] (petitioners) were husband and wife whose legal residence when the petition was filed was Rolla, Missouri. Petitioners filed their Federal income tax returns for the taxable years 1973 through 1975 with the Internal Revenue Service Center, *44 Kansas City, Missouri. Petitioner is a professor at the University of Missouri, Rolla Campus. He also is a farmer. During the school year, from September to May, petitioner spends 20 percent of his time in connection with his business as a farmer. During the summer months, June through August, he spends nearly all his time as a farmer. Petitioner operates two farms. One, Focus Farm, was purchased in 1962. Petitioner operates Focus Farm himself and keeps its farming operations separate from his other farm. A second farm, known as Hidden Lake Ranch (Hidden Lake) was purchased in 1973 for $175,000. Hidden Lake is a 560 acre farm. Approximately 70 acres on Hidden Lake are used for growing crops and approximately 310 acres are used for pasture. The remaining acreage on Hidden Lake is unusable for farming purposes. Petitioner and Marvin R. Rippelmeyer [3] (Rippelmeyer) entered *45 into an agreement dated September 17, 1973, with respect to the operation of and sharing of income from Hidden Lake. Thereafter, Hidden Lake was operated as a joint venture and not as petitioner's sole proprietorship. The joint venture agreement provided as follows: The following agreement is entered into by Robert R. Russell--nonresident party--and Marvin R. Rippelmeyer-resident party. The purpose of this agreement is to engage in a general farming operation. The parties agree to the following points: 1. All income and expenses will be shared equally unless specified otherwise. 2. Each party will contribute equipment of equal value. 3. Any additions to the inventory by purchase become joint property.
4. Any excess inventory of commodities will be retained by the contributing party. 5. Any excess inventory of livestock will be retained by the contributing party. The increase however becomes joint property. 6. Nonresident party agrees *46 to furnish suitable residence to the resident party. 7. Resident party agrees to furnish management. 8. Capital improvements are the responsibility of the owner.
9. Maintenance will be joint responsibility. 10. All funds will be held in joint account in the name of Hidden Lake Ranch. During the years at issue, Russell and Rippelmeyer ran the Hidden Lake farm business. Rippelmeyer was a joint venturer and not an employee of the joint venture. He and petitioner maintained a herd of livestock consisting of approximately 135 female beef cows, which were bred and had calves. They raised crops such as hay, corn, and wheat, and stored crops grown on the farm until either sold or used to feed the animals. Additionally, they maintained tractors and other farm equipment used in the farming operation. All receipts from Hidden Lake are deposited into a checking account under the name "Hidden Lake Farm." Expenses of the joint venture are paid from this account. Hidden Lake is operated separately from Focus Farm, with no commingling of income from receipts in bank accounts, and no consolidation of payment of expenses. Rippelmeyer did not render any services with respect to *47 the operation of Focus Farm. In a farming operation such as the one at Hidden Lake, it is preferable to have a resident manager who readily is available to oversee farm operations. For example, a resident manager is able more quickly than a nonresident manager to locate and return cattle which break out of the pasture and to observe and identify sick animals. During the taxable years 1973 through 1975, Rippelmeyer resided with his family in the farmhouse located on the Hidden Lake property. Rippelmeyer and his family did not pay rent. Russell made no capital improvements to the house during these years. When petitioner and Rippelmeyer determined the expenses of the joint venture for the years at issue, they apportioned the utilities used at Hidden Lake so that the utilities related to the farmhouse were considered personal rather than joint venture expenses. The expenses for farmhouse utilities, unlike other utility expenditures for the Hidden Lake operation, were not included in petitioner's one-half share of joint venture expenses deducted on his income tax returns. At the end of each taxable year, petitioner and Rippelmeyer determined the profits of the joint venture *48 and divided the profits between themselves, with each one receiving one-half. On his individual income tax returns, petitioner reported 50 percent of the income from Hidden Lake and deducted 50 percent of expenses incurred by the joint venture. Petitioner held record title to Hidden Lake during 1973, 1974, and 1975 although the property was used in the joint venture operation. During each year at issue, petitioner took a depreciation deduction in the amount of $1,000 with respect to the Hidden Lake farmhouse. [4] This deduction was taken in addition to the deduction for his share of Hidden Lake expenses, one-half of which are attributable under the joint venture agreement to petitioner and one-half of which are attributable to Rippelmeyer. *49 The portion of the purchase price of Hidden Lake which is allocable to the farmhouse located on the property is $35,000. The useful life of the farmhouse located on Hidden Lake was 35 years. [5]
Ptitioner and Rippelmeyer have not filed partnership income tax returns for any taxable year since the formation of the joint venture. The joint venture does not withhold any employment or unemployment taxes with respect to either petitioner or Rippelmeyer. The Hidden Lake joint venture, however, is taxable as a partnership. [6]
Petitioner argues that he is entitled to deduct depreciation for the Hidden Lake farmhouse for the years at issue. He argues that the farmhouse was held for the production of income within the meaning of section 167(a)(2) because (1) he planned to sell the entire farm, including the farmhouse, at a profit, and (2) because the house was part of the farm as a whole, and the farm did produce income in fact. Petitioner, moreover, contends that the farmhouse was used in his trade or business within the meaning of *50 section 167(a)(1) because it was actually used in the farming operation although never contributed to the capital of the joint venture. Respondent argues that petitioner has not shown the farmhouse was held for the production of income because it was not rented and because petitioner did not show he held the farmhouse as investment property. Respondent contends that any income produced by Hidden Lake was joint venture income and petitioner's entitlement to depreciation must, therefore, be examined with respect to the joint venture. Respondent reasons that because the farmhouse was used as the personal residence of a joint venturer, depreciation is not a deductible trade or business expense by the other joint venturer. We agree with respondent that petitioner is not entitled to deduct depreciation on the Hidden Lake farmhouse. Section 167(a)[7] provides a depreciation deduction for property used in the trade or business or held for the production of income. Respondent has not contested either the allocation of the purchase price to the farmhouse or the useful life of 35 years assigned *51 to it by the petitioner. Thus, the sole question for our decision is whether the Hidden Lake framhouse is depreciable property. We turn first to petitioner's contention that the property is held for the production of income because (1) the property is held with the expectation of realizing a profit on resale, (2) the residence is used for storing supplies and equipment and quartering livestock, and (3) although no rent as such was paid by Rippelmeyer for living with his family in the farmhouse, profits from the joint venture are a form of rent for the farmhouse. There is nothing in the record to indicate that petitioner purchased Hidden Lake for the purpose of making a profit on resale, nor is there anything to indicate the farmhouse was used for storage or for quartering livestock. Nothing in the joint venture agreement shows that any part of petitioner's share of *52 joint venture profits was intended to be in lieu of rent from Rippelmeyer, and no other evidence was presented to support this point. Petitioner has not shown that he made any capital expenditures to improve or repair the farmhouse while Rippelmeyer was in residence. Petitioner has failed to meet his burden of proof with respect to these arguments. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). [8] Consequently, we find the farmhouse was not held for the production of income in the sense argued by petitioner. Next, we turn to a consideration of the farmhouse as a part of the farm as a whole. Petitioner argues that section 1.167(a)-6(b), Income Tax Regs., is applicable to him.That regulation states, in part, that "depreciation may be claimed on farm buildings (except a dwelling occupied by the owner) * * *." Petitioner's contention is that a depreciation deduction should be allowed because the farmhouse is not occupied by the "owner" of the farm. This contention is based on a construction *53 of the language of the regulation that we do not believe was intended or should be used. Steen v. Commissioner,61 T.C. 298, 304 (1973), affd. per curiam 508 F.2d 268 (5th Cir. 1975). [9] In Steen, we stated that "such a broad application of the regulation would go beyond the purview of the statute" and, therefore, construed the regulation to provide a depreciation deduction only for "buildings and machinery used in the business of farming." Steen,61 T.C. at 304. Thus, without showing that the farmhouse was used in the business, petitioner is not entitled to claim depreciation on the farmhouse. Where a personal residence is involved, it is especially important to establish its relationship to a trade or business. See, e.g., Steen v. Commissioner,supra;Meeker v. Commissioner,supra;Commissioner v. Moran,236 F.2d 595 (8th Cir. 1956), revg. T.C. Memo. 1955-202. *54 Respondent correctly contends that because the business conducted on Hidden Lake is a joint venture, petitioner's allowance for depreciation must be determined by reference to the joint venture. [10] Hidden Lake, on this record, is an income-producing operation and is run as a joint venture. The parties have stipulated that the Hidden Lake joint venture is taxable under partnership principles. See section 761. Because this joint venture is the sole income-producing or business operation at Hidden Lake, if the farmhouse is depreciable property, it will be because it is used in the trade or business of the joint venture. Cf. Steen v. Commissioner,61 T.C. at 304 (depreciation on farm buildings allowed if used in the business of farming); Meeker v. Commissioner,supra.[11]
*55 Respondent concedes that because Rippelmeyer acts as resident manager of the farm, the costs of providing Rippelmeyer with a residence are to some degree business connected. Respondent, however, argues that the use of the Hidden Lake farmhouse as a personal residence for Rippelmeyer and his family makes the costs associated with the use of the property nondeductible personal, living, and family expenses under section 262 and section 1.262-1(a), Income Tax Regs. Additionally, respondent cites Commissioner v. Moran,236 F.2d 595 (8th Cir. 1956), revg. Moran v. Commissioner,T.C. Memo. 1955-202 and Commissioner v. Doak,234 F.2d 704 (4th Cir. 1956), revg. Doak v. Commissioner,24 T.C. 569 (1955) for the proposition that partners cannot deduct depreciation on property used as a personal residence by an individual who is a partner and not an employee of the partnership. Respondent asserts that on this point Moran is controlling under the rule of Golsen v. Commissioner,54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), cert. denied, 404 U.S. 940 (1971), *56 because venue for appeal in the present case will lie to the Court of Appeals for the Eighth Circuit. In Moran, the Eighth Circuit, following and supplementing the Fourth Circuit's decision in Doak,[12] determined that expenses connected with lodging the resident manager-co-partners of a hotel, although "of a quasi business nature" were essentially personal and, therefore, nondeductible. Commissioner v. Moran,236 F.2d at 597. The Court stated that despite the fact that the taxpayers "lived at the hotel * * * of necessity and for the convenience and benefit of the business" it did not follow that expenses connected with lodging lost "their personal characteristics because they may contribute indirectly to a taxpayer's business activities." Commissioner v. Moran,236 F.2d at 597. Furthermore, the Court held that the convenience of the employer rule [13] did not apply in a partnership because no employer-employee relationship was possible between a partner and a partnership. [14]Commissioner v. Moran,236 F.2d at 598. *57 We agree with respondent that the decision of the Eigth Circuit in Moran is controlling where no employer-employee relationship is asserted. Thus, the personal use of the farmhouse by joint venturer Rippelmeyer controls the characterization of the farmhouse for the purposes of section 167. In the present case, it is clear that the farmhouse is not depreciable property. It is not true, as petitioner appears to suggest, that because petitioner purchased the farmhouse as a part of the farm as a whole, that the entire farm and everything on it not converted to his own personal use should be considered to be business-connected. See Steen v. Commissioner,61 T.C. at 303. Petitioner has not shown that the farmhouse actually was used in the business. A stipulation that it is "preferable" to have a resident manager as opposed to a nonresident manager does not meet the burden of proof necessary to turn a personal use structure into depreciable property. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a); cf. Steen v. Commissioner,61 T.C. at 304; *58 Meeker v. Commissioner,supra.
Because the use of the farmhouse is personal rather than related to the business of the joint venture, section 262 dictates that the farmhouse is not depreciable property. [15] Petitioner has conceded that he is not entitled to the benefit of section 119, the convenience of the employer rule, and under Moran, he would not prevail with this assertion. Commissioner v. Moran,supra;Golsen v. Commissioner,supra.The depreciation on the farmhouse is determined by reference to the business of the joint venture. Because the joint venturers would not be allowed a depreciation deduction through the joint venture, petitioner cannot claim one separately. See Commissioner v. Moran,supra;Commissioner v. Doak,supra;Steen v. Commissioner,supra;Meeker v. Commissioner,supra.
*59 Because of concessions made by the petitioners on other issues, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as amended, and in effect for the taxable years at issue, unless otherwise stated.↩
2. Petitioner Barbara E. Russell is a party to this proceeding solely by virtue of having filed joint individual income tax returns with petitioner Robert R. Russell for the taxable years 1973, 1974, and 1975 and references to "petitioner" or "Russell" will hereinafter refer to Robert R. Russell.↩
3. The name "Rippelmeyer" was spelled inconsistently in the materials presented with this case. We have used this spelling to conform with Rippelmeyer's signature and typewritten name on the joint venture agreement.↩
4. On petitioner's Federal income tax return for 1973, he included a single Schedule F only, which included all income and expenses of Focus Farm as well as petitioner's 50 percent share of the gross receipts and expenses of Hidden Lake. On his returns for 1974 and 1975, petitioner included two Schedules F, one of which included his share of the gross receipts and expenses of Hidden Lake. For this reason, the $1,000 deduction for depreciation for 1973 appears taken with respect to both the Focus Farm and Hidden Lake operations, while in 1974 and 1975, the deduction is taken with respect to Hidden Lake only.↩
5. Respondent does not contest the allocation of the purchase price to the farmhouse or the useful life of 35 years.↩
6. See section 761(a).↩
7. Section 167(a) states: (a) General Rule.-There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)- (1) of property used in the trade or business, or (2) of property held for the production of income.↩
8. Any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
9. See also Meeker v. Commissioner,T.C. Memo. 1981-215, where the Court did not apply a literal reading to construe this regulation to extend to any farm building not occupied by an owner. In Meeker,↩ an otherwise personal use structure was not changed into depreciable business property where a tenant house was occupied by the owner's son who worked on the farm full time and received a share of farm income.
10. Although depreciation for 1973 was claimed on Schedule F that combined deductions for Focus Farm and Hidden Lake, Hidden Lake was a separate operation and deductibility of depreciation is not determined by any reference to petitioner's other farm. See footnote 4, supra.↩
11. Petitioner argues that he is entitled to deduct depreciation individually without any reference to the joint venture business. As stated earlier in this opinion, the farm is not investment property and the only trade or business is the joint venture. Petitioner claims that under section 702 certain expenses are deductible by partners individually although the partnership cannot make deductions from its collective income and, therefore, he can depreciate the farmhouse even where the joint venture cannot. He further contends that section 704 authorizes him to deduct expenses in connection with the farmhouse because use of, but not legal title to the farmhouse was given to the joint venture. Both these sections are inapplicable to petitioner's case because depreciability of the farmhouse hinges on whether it is used in the joint venture trade or business. Issues such as whether petitioner used his own funds to purchase the farm and whether the farm was contributed as capital to rather than used by the joint venture, therefore, are irrelevant.↩
12. Commissioner v. Doak,234 F.2d 704, 708 (4th Cir. 1956), revg. 24 T.C. 569↩ (1955), held that because a hotel was operated as a partnership, the taxpayers as partners could not be employees of the partnership and, therefore, the partnership could not deduct depreciation or other expenses on property converted to personal use by a partner-manager. 13. See section 119, which superseded section 29.22(a)-3, Regs. 111 (Internal Revenue Code of 1939) under which both Moran and Doak↩ were in part decided. 14. Although section 707(a) makes it possible for a partner to be considered an employee of a partnership for limited purposes, see e.g., Pratt v. Commissioner,64 T.C. 203 (1975), affd. on this issue 550 F.2d 1023↩ (5th Cir. 1977), it is not appropriate to stray from an aggregate view of the joint venture in the present case. Petitioner concedes that Rippelmeyer was not an employee of the joint venture and acted as a joint venturer at all times. Indeed, petitioner states on brief that he "has made no attempt to claim he or his partner, Rippelmeyer, were employees of the partnership * * *." Additionally, Rippelmeyer's actions in managing the joint venture, as near as we can tell from the stipulation of facts, were performed within the scope of a joint venturer's action as delineated by the joint venture agreement.
15. Petitioner states that by denying him a depreciation deduction for the farmhouse, respondent "vicariously" is imputing to him, Rippelmeyer's personal use of the house. This statement is without merit since the only determination relevant to whether the house is depreciable is a characterization of its use with respect to the joint venture business.↩